LAKE v PUTNAM

Docket No. 330955. Submitted June 14, 2016, at Detroit. Decided July 5, 2016, at 9:10 a.m.

Plaintiff, Michelle Lake, filed a complaint in the Washtenaw Circuit Court, Family Division, against defendant, Kerri Putnam, seeking parenting time with a child born to Putnam during the parties' relationship. Lake and Putnam were involved in a romantic relationship from 2001 until 2014 during which time Putnam was artificially inseminated and birthed a child. The parties never married and could not have married in Michigan because of Michigan's ban on same-sex marriage. After the parties' relationship ended, Putnam refused to allow Lake to see the child. Putnam moved for summary disposition of Lake's complaint. The court, Darlene A. O'Brien, J., denied Putnam's motion and ordered that Lake be awarded supervised parenting time with the child. Putnam appealed by leave granted.

The Court of Appeals *held*:

1. It was undisputed that Lake was a third party under the Child Custody Act, MCL 722.21 *et seq*. Under the act, a third party can establish standing to bring a child custody dispute under MCL 722.26b or MCL 722.26c(1)(b), but Lake failed to satisfy the requirements of those statutes. Lake argued that she nonetheless had standing under the equitable-parent doctrine. The equitable-parent doctrine may be applied in cases in which the child at issue was born during a marriage between two persons who acted as the child's parents. Before the United States Supreme Court's decision in *Obergefell v Hodges*, 576 US ___; 135 S Ct 2584 (2015), the equitable-parent doctrine was applicable only to disputes involving opposite-sex marriages. After the Supreme Court ruled in *Obergefell* that the ban on same-sex marriage existing in many jurisdictions, including Michigan, was unconstitutional, the equitable-parent doctrine is applicable to cases involving same-sex marriages. In this case, however, the equitable-parent doctrine did not apply because the parties were never married. The equitable-parent doctrine could not be extended to unmarried same-sex couples when it had always been unavailable to unmarried opposite-sex couples. Therefore, the

trial court erred by denying Putnam's motion for summary disposition and by granting Lake supervised parenting time with the child born to Putnam during the parties' relationship.

2. Lake did not having standing to assert the child's constitutional right to equal protection because in general, a party may not assert the constitutional or statutory rights of another person.

Trial court order denying Putnam's motion for summary disposition reversed, parenting-time order vacated, and case remanded for entry of summary disposition in Putnam's favor.

SHAPIRO, J., concurring, agreed that the trial court's denial of Putnam's motion for summary disposition should be reversed and that the trial court's parenting-time order should be vacated, but noted that *Obergefell* demanded extension of the equitable-parent doctrine to those situations in which a party who had been in a same-sex relationship could prove that the parties in the relationship would have married before the child's birth or conception if the right had not been unconstitutionally denied to them. In this case, however, Lake failed to produce any evidence that the parties would have married had they been permitted to do so.

FAMILY LAW — CHILD CUSTODY AND PARENTING TIME — EQUITABLE-PARENT DOCTRINE — SAME-SEX RELATIONSHIP.

The equitable-parent doctrine does not apply to couples who were unmarried at the time a child was conceived or born; this rule applies to both opposite-sex and same-sex couples alike, and there is no exception for same-sex couples who were unconstitutionally prevented from marrying at the time the child was conceived or born.

American Civil Liberties Union Fund of Michigan (by *Jay D. Kaplan, Daniel S. Korobkin,* and *Michael J. Steinberg*) and *Sarah Zearfoss* and *Naomi J. Woloshin* for Michelle Lake.

*Anne Argiroff PLC* (by *Anne Argiroff*) and *Francie L. Novar PLLC* (by *Francie L. Novar*) for Kerri Putnam.

Amici Curiae:

University of Michigan Child Advocacy Law Clinic (by *Frank E. Vandervort*) for Children's Trauma As-

sessment Center, Michigan Chapter of the National Association of Social Workers, and Michigan League for Public Policy.

Before: METER, P.J., and SHAPIRO and O'BRIEN, JJ.

O'BRIEN, J. Defendant, Kerri Putnam, appeals by leave granted the circuit court's October 26, 2015 order denying her summary-disposition motion. *Lake v Putnam*, unpublished order of the Court of Appeals, entered January 28, 2016 (Docket No. 330955). On appeal, defendant additionally challenges the circuit court's November 18, 2015 order awarding plaintiff, Michelle Lake, parenting time with defendant's biological child. We reverse the October 26, 2015 summary-disposition order, vacate the November 18, 2015 parenting-time order, and remand this matter for entry of an order granting summary disposition in defendant's favor.

Plaintiff and defendant were in a romantic relationship from 2001 until 2014. During their relationship, defendant was artificially inseminated and gave birth to the minor child at issue in this case. Shortly after the parties' relationship ended, defendant denied plaintiff's requests to spend time with the child. In light of this refusal, plaintiff filed this lawsuit, seeking parenting time with the child. Defendant filed a summary-disposition motion, arguing that plaintiff, as an unrelated third party, lacked standing to seek parenting time with the child. The circuit court denied defendant's motion on October 26, 2015, and on November 18, 2015, the circuit court awarded plaintiff supervised parenting time with the minor child. Defendant subsequently applied for leave to appeal the circuit court's October 26, 2015 order, and we granted her application.

A circuit court's decision on a summary-disposition motion is reviewed de novo. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). "Whether a party has legal standing to assert a claim constitutes a question of law that we review de novo." *Heltzel v Heltzel*, 248 Mich App 1, 28; 638 NW2d 123 (2001). Similarly, whether a parent has a sufficient basis to assert parental rights under the equitable-parent doctrine also constitutes a question of law that we review de novo. *Killingbeck v Killingbeck*, 269 Mich App 132, 141; 711 NW2d 759 (2005). As it relates specifically to "the resolution of a child custody dispute," Michigan's Child Custody Act, MCL 722.21 *et seq.*, provides that "all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28.

On appeal, defendant argues that the circuit court erred by denying her summary-disposition motion because plaintiff lacks standing to pursue parenting time with the child. We agree.

Generally, a party has standing so long as he or she "has some real interest in the cause of action" or its subject matter. *In re Anjoski*, 283 Mich App 41, 50; 770 NW2d 1 (2009) (quotation marks and citations omitted). "However, this concept is not given such a broad application in the context of child custody disputes involving third parties, or any individual other than a parent[.]" *Id.* (quotation marks and citation omitted). This Court and our Supreme Court have specifically and unequivocally held that "a third party does not have standing by virtue of the fact that he or she resides with the child and has a 'personal stake' in the outcome of the litigation." *Id.* at 50-51, citing *Bowie v*

*Arder*, 441 Mich 23, 42; 490 NW2d 568 (1992). Indeed, a third party may not "create a custody dispute by simply filing a complaint in circuit court alleging that giving legal custody to the third party is in the child's best interests . . . ." *Id.* at 51 (quotation marks, citations, and brackets omitted). "Rather, under the Child Custody Act the Legislature has limited standing for third parties to two circumstances"—under MCL 722.26b (establishing standing for third-party guardians or limited guardians under certain circumstances) or MCL 722.26c(1)(b) (establishing standing for third parties who satisfy all of the following: the minor child's biological parents never married, one of the child's parents has died or is missing and the other parent does not have legal custody, and the third person is related to the child). *Id.*

In this case, it is undisputed that plaintiff is a third person, see MCL 722.22(k) (defining "third person" as "an individual other than a parent"), not a parent, see MCL 722.22(i) (defining "parent" as "the natural or adoptive parent of a child"). Therefore, as a third person, plaintiff must satisfy the standing requirements under MCL 722.26b or MCL 722.26c(1)(b). She simply does not. Because plaintiff is not a parent or a third party with standing under the Child Custody Act, she lacks standing to create a custody dispute. *Sinicropi v Mazurek*, 273 Mich App 149, 177; 729 NW2d 256 (2006). Accordingly, because the circuit court erred by concluding that plaintiff had standing to pursue parenting time with the child, we reverse its October 26, 2015 order denying defendant's summary-disposition motion, vacate its November 18, 2015 order awarding plaintiff parenting time, and remand this matter for entry of an order granting summary disposition in defendant's favor.

On appeal, plaintiff argues that "she has standing to bring this suit" because she "asserts a right to custody and parenting time . . . under Michigan's equitable-parent doctrine." Under the equitable-parent doctrine, a husband who is not the biological father of a child born or conceived during wedlock may, nevertheless, be considered that child's natural father if three requirements are satisfied: (1) the husband and the child must mutually acknowledge their father-child relationship, or the child's mother must have cooperated in the development of that father-child relationship before the divorce proceedings commenced, (2) the husband must express a desire to have parental rights to the child, and (3) the husband must be willing to accept the responsibility of paying child support. *Van v Zahorik*, 460 Mich 320, 330; 597 NW2d 15 (1999); *Atkinson v Atkinson*, 160 Mich App 601, 608-609; 408 NW2d 516 (1987). "Once it is determined that a party is an equitable parent, that party becomes endowed with both the rights and responsibilities of a parent." *York v Morofsky*, 225 Mich App 333, 337; 571 NW2d 524 (1997). Plaintiff claims that because she satisfies the three requirements in *Van* and *Atkinson*, she is the child's equitable parent. She is incorrect.

While plaintiff claims that she satisfies all requirements under the equitable-parent doctrine, she ignores one crucial, and dispositive, requirement for the equitable-parent doctrine to apply—*the child must be born in wedlock*. *Van*, 460 Mich at 330 (stating that the equitable-parent doctrine applies only "to a child born or conceived during the marriage"). The child at issue in this case was not born or conceived during a marriage. In fact, it is undisputed that the parties were never married. Therefore, the equitable-parent doctrine does not apply. Had the parties married in another jurisdiction, for example, our conclusion might

be different. See, e.g., *Stankevich v Milliron (On Remand)*, 313 Mich App 233, 240-241; 882 NW2d 194 (2015). While we acknowledge that the issue presented in this case is complex, we simply do not believe it is within courts' discretion to, at the request of one party and in light of the United States Supreme Court's decision in *Obergefell v Hodges*, 576 US ___; 135 S Ct 2584; 192 L Ed 2d 609 (2015), retroactively transform an unmarried couple's past relationship into marriage for the purpose of custody proceedings. Stated differently, it is, in our view, improper for a court to impose, several years later, a marriage on a same-sex unmarried couple simply because one party desires that we do so.

On appeal, plaintiff asks that we follow *Ramey v Sutton*, 2015 OK 79; 362 P3d 217 (2015), a case that is admittedly similar to the one at bar. In that case, a same-sex couple ended their relationship after eight-and-a-half-years. *Id.* at ¶ 6. During their relationship, one of the parties, Kimberly Sutton, was artificially inseminated and gave birth to a child. *Id.* Upon their separation, Charlene Ramey filed a lawsuit against Sutton, requesting that she be recognized as the child's legal parent for parenting-time and custody determinations. *Id.* at ¶ 17. Sutton objected, arguing that Ramey lacked standing because the two were never married. *Id.* The Oklahoma Supreme Court agreed with Ramey and recognized her "as being *in loco parentis* to [the parties'] child and . . . entitled to a best interests of the child hearing." *Id.* Plaintiff asks that this Court reach the same conclusion, but we cannot do so for several reasons.

First, Oklahoma's *in loco parentis* status does not only apply to married couples; rather, it appears to apply to anyone "who has assumed the status and

obligations of a parent without a formal adoption." See *Workman v Workman*, 1972 OK 74, ¶ 10; 498 P2d 1384 (1972) (quotation marks and citation omitted), overruled on other grounds by *Unah v Martin*, 1984 OK 2; 676 P2d 1366 (1984). Michigan's equitable-parent doctrine, on the other hand, applies only to married couples. Additionally, our Supreme Court has squarely rejected the argument that holding oneself out as a child's parent, alone, is sufficient to be considered that child's parent under the equitable-parent doctrine. See, e.g., *Van*, 460 Mich at 330-331 (stating that the equitable-parent doctrine does *not* apply to cases in which the child was not born in wedlock). While again, we understand that the issue presented here is complex, especially in light of the *Obergefell* decision, we simply do not believe it is appropriate for courts to retroactively impose the legal ramifications of marriage onto unmarried couples several years after their relationship has ended. That, in our view, is beyond the role of the judiciary. See *Van*, 460 Mich at 330 ("The creation and extension of rights relating to child custody matters is clearly the province of the Legislature, not the judiciary.").

Plaintiff also argues that such a conclusion violates her constitutional rights to due process and equal protection. "The Fourteenth Amendment of the United States Constitution provides that '[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.'" *In re Sanders*, 495 Mich 394, 409; 852 NW2d 524 (2014), quoting US Const, Am XIV, § 1 (alteration in *Sanders*). The Due Process Clause requires, procedurally, "notice and a meaningful opportunity to be heard before an impartial decision-maker," *In re TK*, 306 Mich App 698, 706; 859 NW2d 208 (2014), and substantively, "the

statute need only be rationally related to a legitimate governmental interest," *Landon Holdings, Inc v Grattan Twp*, 257 Mich App 154, 173; 667 NW2d 93 (2003). "The Equal Protection Clause requires that all persons similarly situated be treated alike under the law." *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 486 Mich 311, 318; 783 NW2d 695 (2010).

In this case, it is somewhat difficult to discern the basis for plaintiff's due-process and equal-protection claims. It appears that she is, in essence, arguing that she is being treated unfairly due to her sexual orientation, but such an assertion is not factually supported by the record or legally supported by existing authority. Again, had she been married to the child's biological parent, regardless of whether the biological parent was male or female, the outcome of this appeal would have been different. *Stankevich*, 313 Mich App at 237-240. But she was not. In fact, plaintiff has not presented any evidence to support a conclusion that she and defendant would have been married but for the law in Michigan (or in Florida, where the parties also resided for a period of time). Plaintiff has not provided any evidence reflecting the parties' intent to marry, the parties never made an effort to marry in another jurisdiction, the parties chose not to have plaintiff adopt the child in Florida despite being legally able to do so, and defendant adamantly denies that she would have ever married plaintiff even if legally able to do so. Furthermore, we, as well as our Supreme Court, have expressly chosen not to extend the equitable-parent doctrine beyond the context of marriage, *Bay Co Prosecutor v Nugent*, 276 Mich App 183, 191 n 2; 740 NW2d 678 (2007); *Van*, 460 Mich at 330-335, and to do so only for same-sex couples would be improper, *Kolailat v McKennett*, unpublished opinion per curiam of the Court of Appeals, issued December 17, 2015 (Docket

No. 328333), pp 2-3 (declining to apply the equitable-parent doctrine to a same-sex couple after the *Obergefell* decision).

Lastly, plaintiff argues that our conclusion violates the child's constitutional right to equal protection. "Generally, persons do not have standing to assert constitutional or statutory rights on behalf of another person." *In re HRC*, 286 Mich App 444, 458; 781 NW2d 105 (2009). That is precisely what plaintiff is trying to do, i.e., assert the child's constitutional rights. Accordingly, we reject this argument as well.

In sum, while we acknowledge the challenges presented in child-custody disputes, including those involving same-sex couples, we conclude that the equitable-parent doctrine does not extend to unmarried couples. *Van*, 460 Mich at 330-331. This is true whether the couple involved is a heterosexual or a same-sex couple. Consequently, because the equitable-parent doctrine does not apply, plaintiff lacks standing to seek parenting time in this case. The circuit court thus erred by denying defendant's summary-disposition motion for that reason. We therefore reverse the circuit court's October 26, 2015 order denying defendant's summary-disposition motion, vacate the circuit court's November 18, 2015 order awarding plaintiff parenting time, and remand this matter for entry of an order granting summary disposition to defendant.

Reversed and remanded. No taxable costs pursuant to MCR 7.219, a question of public policy being involved.

METER, P.J., concurred with O'BRIEN, J.

SHAPIRO, J. (*concurring*). I agree with my colleagues that the trial court's ruling should be reversed and the

motion for parenting time dismissed. I write separately
to point out that the facts as alleged by plaintiff do not
fully test the scope of *Obergefell*'s[1] application to Michigan's equitable-parent doctrine and that under different facts a different result may be required.

While the parties disagree as to details, it is undisputed that they lived together for more than a decade as a same-sex couple, that about five years into the relationship defendant bore a child by artificial insemination, that for several years the parties each acted as a parent to the child, and that they were both viewed as parents by the child. It is also undisputed that several years later, around September 2014, defendant ended the relationship, moved out with the child, and entered into a new relationship with a different woman. Defendant initially allowed plaintiff visitation with the child, but eventually she refused to do so. In June 2015, plaintiff filed this action seeking parenting time.

MCL 722.22(i) and (k) respectively define the terms "parent" and "third person" for purposes of the Child Custody Act, MCL 722.21 *et seq*. Under these definitions, plaintiff is a "third person," not a "parent," and so she is not provided any parental rights by statute. Accordingly, the only way for her to be entitled to relief is through application of the equitable-parent doctrine, which we defined in *Atkinson v Atkinson*, 160 Mich App 601; 408 NW2d 516 (1987). The *Atkinson* Court held that under the equitable-parent doctrine,

> a husband who is not the biological father of a child born or conceived during the marriage may be considered the natural father of that child where (1) the husband and the child mutually acknowledge a relationship as father and

---

[1] *Obergefell v Hodges*, 576 US ___; 135 S Ct 2584; 192 L Ed 2d 609 (2015).

child, or the mother of the child has cooperated in the development of such a relationship over a period of time prior to the filing of the complaint for divorce, (2) the husband desires to have the rights afforded to a parent, and (3) the husband is willing to take on the responsibility of paying child support. [*Id.* at 608-609.]

Although the husband in *Atkinson* was not the child's biological father, he and the child's mother were married at the time the child was born or conceived. *Id.* at 604-605, 608. Subsequently, in *Van v Zahorik*, 460 Mich 320, 330-331; 597 NW2d 15 (1999), our Supreme Court considered whether to expand this doctrine outside the context of marriage. The parties in *Van* had been living together as an opposite-sex unmarried couple for five years and continued their relationship for several years after they stopped living together; during that time, the defendant gave birth to two children. *Id.* at 323. After the parties ended their relationship, it was determined that the plaintiff was not in fact the biological father of the children. *Id.* at 324. He brought an action seeking parental rights as an equitable parent. *Id.* By a 4-3 vote, our Supreme Court concluded that the equitable-parent doctrine could be applied only to parties that were married when the child was born or conceived. *Id.* at 330-331, 337.

Accordingly, as the parties in the instant case were never married it would appear that *Van* forecloses plaintiff's claim of parental rights under the equitable-parent doctrine. Plaintiff makes two arguments in response. First, she argues that equitable parental rights should be viewed as arising from the best interests of the child and not from the relationship status of the parties. Therefore, if it is in the best interests of the child to establish parental rights in a child's long-term de facto parent, equity requires that

we do so regardless of the precise nature of that
person's relationship with the biological parent. This
argument, however, was considered and rejected in
*Van*, in which it was the basis of Justice BRICKLEY's
dissent. Justice BRICKLEY wrote:

> [T]he issue in this case is not, or at least should not be,
> sexual relationships or the marital status of the parties.
> Those factors should be considered, if at all, during a best
> interests hearing conducted by the circuit court pursuant
> to MCL 722.23; MSA 25.312(3). Rather, this Court's focus
> should be on the innocent victims in this case, and many
> others like them: the children of dissolving nonmarital
> relationships. The issue is the best interests of these
> children and the role of the court in protecting them. [*Van*,
> 460 Mich at 338-339 (BRICKLEY, J., dissenting).]

While Justice BRICKLEY's view has merit, it was not the
view of the majority of the *Van* Court and, we are
bound by the *Van* decision until such time as it is
modified by the Supreme Court or the Legislature.
Accordingly, I conclude that we must reject plaintiff's
request to expand the equitable-parent doctrine be-
yond marriage, which would require consideration of
the best interests of the child rather than the relation-
ship of the parties.

Plaintiff's second argument turns on the fact that
the parties were a same-sex couple and so were subject
to the near-universal ban on same-sex marriage that
existed before the 2015 decision of the United States
Supreme Court in *Obergefell v Hodges*, 576 US ___; 135
S Ct 2584; 192 L Ed 2d 609 (2015). Plaintiff correctly
points out that because the parties are of the same sex,
they were barred from marrying in Michigan and in
Florida, their states of residence during their relation-
ship. It is clear that plaintiff, as a member of a
same-sex couple, did not have the opportunity afforded
to a man in a heterosexual relationship to marry her

female partner when her partner became pregnant. And, given the decision in *Obergefell*, we now know that denial of that opportunity to marry was an unconstitutional deprivation of equal protection under law. *Id.* at ___; 135 S Ct at 2604-2605.

In *Stankevich v Milliron (On Remand)*, 313 Mich App 233, 240, 242; 882 NW2d 194 (2015), we concluded that when a same-sex couple was married in a jurisdiction recognizing the validity of same-sex marriages, the plaintiff had standing to seek relief under the equitable-parent doctrine. I would not limit our application of *Obergefell* to cases in which the parties actually married in another jurisdiction. The fact that marriage was available in some other jurisdiction did not remove the unconstitutional burden faced by same-sex couples residing in a state that barred same-sex marriage within its borders. The impediment was defined by Michigan law, and the existence of that law to those who lived under it should not now be treated as constitutionally insignificant because other states treated the issue differently.

Accordingly, plaintiff is correct that *Obergefell* demands extension of the equitable-parent doctrine. My colleagues are rightfully concerned about retroactively imposing marriage on a same-sex couple simply because one party now desires that we do so. However, that concern is fully addressed by a factual inquiry into the facts as they existed at the time the child was born or conceived. The question is whether the parties would have married before the child's birth or conception but did not because of the unconstitutional laws preventing them from doing so. If they would have married at that time, then the fact that one or both would not marry today should not retroactively impose

a denial of parental rights that but for the unconstitutional bar to same-sex marriage would have been established.

Oregon's Court of Appeals recently addressed this question in *In re Madrone*, 271 Or App 116; 350 P3d 495 (2015), and its analysis offers worthwhile guidance. The Oregon court aptly described the problem: "[T]he distinction between married and unmarried heterosexual couples is that the married couples have chosen to be married while the unmarried couples have chosen not to be." *Id.* at 128. In contrast, a same-sex couple living in a jurisdiction that did not allow or recognize the validity of same-sex marriages was unable to choose whether they would be a married or unmarried couple. The deprivation of that choice was a violation of their equal protection rights. *Obergefell*, 576 US at ___; 135 S Ct at 2604-2605. The *Madrone* court discussed the same concerns that have arisen in this case:

> Extending the statute simply on the basis of intent to be a parent would comport with one purpose of the legislation—protecting the support and inheritance rights of children conceived by artificial insemination— but it would not be consistent with the overall statutory scheme—specifically, the legislature's decision to make the statute apply only to children of married couples. If an unmarried opposite-sex couple conceives a child by artificial insemination using sperm from a donor, the statute does not apply, even if the couple, in the words that the trial court used to describe petitioner and respondent, "lived together as a couple, intended to remain together, and intended to have a child and to co-parent the child." Accordingly, it would be inappropriate for courts to extend the statute to same-sex couples solely on the basis of one or both of the parties' intent to have the nonbiological party assume a parental role. [*In re Madrone*, 271 Or App at 127-128.]

Ultimately, the *Madrone* court concluded that the determination of whether to extend the statute to same-sex couples who would have chosen to marry must be made on a case-by-case basis and suggested several factors that may be relevant:

> Whether a particular couple would have chosen to be married, at a particular point in time, is a question of fact. In some cases, the answer to that question will be obvious and not in dispute. . . . In other cases, the answer will be less clear. A number of factors may be relevant to the fact finder's determination. A couple's decision to take advantage of other options giving legal recognition to their relationship—such as entering into a registered domestic partnership or marriage when those choices become available—may be particularly significant. Other factors include whether the parties held each other out as spouses; considered themselves to be spouses (legal purposes aside); had children during the relationship and shared childrearing responsibilities; held a commitment ceremony or otherwise exchanged vows of commitment; exchanged rings; shared a last name; commingled their assets and finances; made significant financial decisions together; sought to adopt any children either of them may have had before the relationship began; or attempted unsuccessfully to get married. We hasten to emphasize that the above list is not exhaustive. Nor is any particular factor dispositive (aside from unsuccessfully attempting to get married before same-sex marriages were legally recognized . . .), given that couples who choose not to marry still may do many of those things. Instead, we view the factors as tending to support, but not compelling, an inference that a same-sex couple would have married had that choice been available. [*Id.* at 128-129.]

I would adopt this approach and hold that a party is entitled to seek equitable parental rights arising out of a same-sex nonmarital relationship when a preponderance of the evidence shows that but for the ban on same-sex marriage in the parties' state of residency,

they would have married before the birth of the child. Given that this is a factual question, its resolution requires consideration of the evidence submitted by the parties, and I agree that, as a general rule, it would require an evidentiary hearing. However, like most evidentiary questions, it may be resolved in one party's favor as a matter of law when the other party fails to provide sufficient evidence to create a question of material fact. That is the situation here. While the affidavits presented to the trial court on behalf of plaintiff state that the parties were in a committed relationship and that while in that relationship they raised the child together as coparents, none of the affidavits, including plaintiff's, state or allow for an inference that but for the then-existing unconstitutional barriers to same-sex marriage the parties would have married. Had such evidence been presented, I would have concluded that we should remand the case for the trial court to conduct an evidentiary hearing on the question and, if the trial court answered it affirmatively, for a hearing to determine custody and parenting time in accordance with the best interests of the child. In the absence of such evidence, however, remand proceedings are not required.

In her brief, plaintiff asserts that *Obergefell* held that the denial to same-sex couples of the right to marry was irrational and unjust. She goes on to assert that "[i]t would be equally irrational and unjust for Michigan to deny [the child] the benefits and protections of the equitable-parent doctrine because his parents were unmarried, given that the only reason they were unmarried is that they were unconstitutionally denied the right to marry during their relationship." I fully agree with this view and believe it is consistent with *Obergefell* and the constitutional principles on which *Obergefell* rests. However, on the facts of this

case, I do not believe that plaintiff can establish that she and defendant would have married before the birth or conception of the child but for the unconstitutional ban on same-sex marriage. In another case, the facts may very well be sufficient to demonstrate that the parties would have married if not for the ban on same-sex marriage, and in such a case, I believe the courts would be required to recognize the parental rights of the nonbiological parent and determine custody and parenting time consistent with the best interests of the child.